HENRY G. SCHLESINGER, as Chairman, and SAMUEL MITTELMAN, as Treasurer, of the CODE AUTHORITY BOARD OF THE FUR DRESSING AND DYEING INDUSTRY, an Unincorporated Association, Plaintiff, *v.* KOFSKY-MOOS, INC., a Domestic Corporation Organized and Existing under the Laws of the State of New York, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, December 31, 1934.

*George J. Beldock* [*Lawrence Bloomgarden* of counsel], for the plaintiffs.

*Louis H. Solomon,* for the defendant.

McMAHON, J. The plaintiffs, as chairman and treasurer of the Code Authority Board of the Fur Dressing and Fur Dyeing Industry, bring this action to recover the amount of an assessment levied upon defendant, a corporation engaged in the industry of dressing and dyeing furs, to defray the expenses of the Code Administration for the months of May, June, and July, 1934. The rate of the assessment, one-half of one per cent of the net volume of business for such period, was fixed by Administrative Order No. 161–23 issued by the Administrator for Industrial Recovery August 8, 1934, approving the Code Authority budget and fixing the basis of contribution for members of this industry for said period. The amount of liability for this defendant on the above basis, if any liability exists, has been agreed upon by the parties and for the purpose of this motion for summary judgment may be considered liquidated.

Defendant has failed to pay this assessment, denies any liability therefor, and contests the right of plaintiffs to levy or impose an assessment for the purpose mentioned or to institute action for the collection of the same in this court or in any court. Defendant admits that it is engaged in the business of dressing and dyeing furs and is comprehended within the meaning of the fur dressing and dyeing industry as defined by the Code of Fair Competition for the industry signed by the President December 18, 1933, to become effective December 28, 1933. Defendant also admits paragraph 2 of the complaint: " That said Code Authority Board of the Fur Dressing and Fur Dyeing Industry was duly constituted pursuant to the National Industrial Recovery Act on the third day of March, 1934, and has been and still is the duly authorized and constituted code authority for the Fur Dressing and Fur Dyeing Industry under and pursuant to the code of fair competition for said industry as adopted and approved under and in accordance

with the provisions of the National Industrial Recovery Act and the rules, regulations and orders promulgated thereunder."

Plaintiffs contend they are entitled to maintain this action both on the theory of a contractual obligation created by defendant's express assent to the adoption of said code and also under the authority created and granted by the National Industrial Recovery Act and proceedings thereunder which legislation has been embodied into the laws of this State by the " Schackno Act " (Laws of 1933, chap. 781). The latter contention only will be considered by this court in determining this motion made by plaintiffs for summary judgment under rules 113 and 114 of the Rules of Civil Practice.

In view of the admissions in the answer and opposing affidavits and the undisputed documentary evidence submitted with the motion papers herein, there seems to be no triable issue presented under this consideration of the case and the matter can properly be disposed of in the first instance on a motion of this kind. Novel questions of law are presented upon the determination of which depends plaintiffs' status and right to prosecute this action and defendant's defense thereto.

For the purpose of this motion, the established facts may be regarded as follows:

On December 13, 1933, a Code of Fair Competition for the Fur Dressing and Fur Dyeing Industry was drafted in accordance with the provisions of the National Industrial Recovery Act and submitted to the President for approval. On December 18, 1933, by executive order of the President and upon the recommendation of the Administrator for Industrial Recovery the said code was approved to become effective ten days thereafter. A certified copy thereof was filed in the office of the Secretary of the State of New York on March 14, 1934, in accordance with the provisions of the so-called " Schackno Act." This code recites in article I that upon approval by the President it " shall be the standard of fair competition for such industry and shall be binding upon every member thereof." It provides:

" Article VI — ADMINISTRATION.

" 1. To further effectuate the policies of the National Industrial Recovery Act, a code authority known as the Code Authority Board of the Fur Dressing and Fur Dyeing Industry shall be established as follows: * * *

" 4. The Code Authority Board so organized is hereby constituted the agency for cooperating with the Administration or the Administrator as an administrative agency for the Fur Dressing and Fur Dyeing Industry. Such agency may from time to time

present to the Administrator recommendations based on conditions in the industry as they may develop, for the betterment thereof and for the purpose of further effectuating the operation of the provisions of this code and the policy of the National Industrial Recovery Act. * * *

" 8. The Code Authority Board shall have the following duties and powers to the extent permitted by the Act, subject to the right of the Administrator on review to disapprove or modify any action taken by it.

" (a) The Code Authority Board shall administer the code and shall maintain all activities pertinent thereto * * * and other matters necessary for the effectuation of this Code and Title I of the National Industrial Recovery Act.

" (b) Members of the industry shall be entitled to participate in and share the benefits of the activities of the Code Authority Board and to participate in the selection of the members thereof by assenting to and complying with the requirements of this code and sustaining their reasonable share of the expenses of its administration. Such reasonable share of the expenses of administration shall be determined by the Code Authority Board subject to review by the Administrator, on the basis of such factors as may be deemed equitable.

" (c) No reorganization of the Code Authority Board or reclassification of the divisions in the industry, or modification or amendment of the rules and regulations contained in the code, shall be made over the dissent of any one of the divisional planning committees, except as and where the President may make such reorganization, reclassification, modification, or amendment under the law, without the assent of the parties affected."

Thereafter a proposed modification of subsection (b), section 8, article VI of the said code, together with the proposed budget and basis of assessment for the period of May 1, 1934, to August 31, 1934, was submitted to the administrator. On May 23, 1934, Administrative Order No. 161–14, entitled " Notice of Opportunity to File Objections," was issued by the administrator, annexed to which notice was a copy of the proposed modifications and proposed budget and basis of assessment. This proposed modification was:

" 1. It being found necessary to support the Administration of this Code, in order to effectuate the policy of the Act and to maintain the standards of fair competition established hereunder, the Code Authority is authorized:

" (a) To incur such reasonable obligations as are necessary and proper for the foregoing purposes, and to meet such obligations out of funds which shall be held in trust for the purposes of the Code and raised as hereinafter provided:

" (b) To submit to the Administrator for his approval, subject to such notice and opportunity to be heard as he may deem necessary.

" (1) An itemized budget of its estimated expenses for the foregoing purposes, and

" (2) An equitable basis upon which the funds necessary to support such budget shall be contributed by all members of the industry entitled to the benefits accruing from the maintenance of such standards, and the administration thereof;

" (c) *After such budget and basis of assessment have been approved by the Administrator, to determine and collect assessments as above set forth, and to that end, if necessary, to institute legal proceedings therefor in its own name.*

" (d) Each member of the Industry shall be liable for his or its equitable assessment to the expenses of the maintenance of the Code Authority as hereinabove provided. Failure by a member of the Industry to pay its equitable share of such expense shall be a violation of this Code."

The proposed budget for said period, May first to July thirty-first, which was annexed in an itemized statement, amounted to $11,155, and it provided " a basis of assessment shall be $\frac{1}{2}$ of 1% of the net volume of annual business. Net volume is defined to mean gross volume less allowances and damages." On August 8, 1934, by Administrative Order No. 161–23, the proposed modification budget and basis for contribution for said three months' period was approved by the administrator pursuant to the authority vested in him by order of the President dated November 18, 1933, The code for this industry, therefore, as amended and approved, contains the administrative and enabling provisions hereinbefore set forth. All of the foregoing proceedings were instituted and consummated in accordance with the National Industrial Recovery Act enacted by United States Congress and approved June 16, 1933. This act conferred upon the President for a period of two years certain extraordinary powers and privileges which the executive officer of the government did not before possess. The reason, purpose and justification for this legislation was the existence " of a national emergency productive of widespread unemployment and disorganization of industry," as declared in title I, section 1, of the act. To effectuate the policy of the act, the President was empowered and authorized:

" Sec. 2. (a)  *  *  *  to establish such agencies  *  *  *  to appoint  *  *  *  such officers and employees  *  *  *  as he may find necessary, to prescribe their authorities, duties, responsibilities, and tenure  *  *  *.

" (b) * * * delegate any of his functions and powers under this title to such officers, agents, and employees as he may designate or appoint * * *.

" Sec. 3. (a) Upon the application to the President by one or more trade or industrial associations or groups, the President may approve a code or codes of fair competition for the trade or industry or subdivision thereof, represented by the applicant or applicants * * *.

" (b) After the President shall have approved any such code, the provisions of such code shall be the standards of fair competition for such trade or industry or subdivision thereof.

" (d) Upon his own motion * * * and if no code of fair competition has theretofore been approved by the President, the President * * * may prescribe and approve a code of fair competition for such trade or industry or subdivision thereof, which shall have the same effect as a code of fair competition approved by the President under subsection (a) of this section."

" Sec. 10. (a) The President is authorized to prescribe such rules and regulations as may be necessary to carry out the purposes of this title * * *.

" (b) The President may from time to time cancel or modify any order, approval, license, rule or regulation issued under this title; and each agreement, code of fair competition, or license approved, prescribed or issued under this title shall contain an express provision to that effect."

When an industrial code has thus been approved by the President under the authority conferred upon him by the act, it becomes by the express provision of the act (Sec. 3-b), " the standards of fair competition for such trade or industry." In other words, it constitutes the body of rules and regulations under which the particular industry shall be conducted and governed as long as the act is in force. All of the provisions of a code adopted and approved are summarily imposed and are equally binding upon all members of the industry whether they have assented to the adoption or not. If the industry itself does not supply a code, the President by the express provisions of the act (Sec. 3-d) is authorized and empowered to prescribe and approve a code for such industry without the assent of any of the members thereof. Since the enactment of this act, the courts have consistently recognized, upheld and enforced the provisions in industrial codes relating to hours of labor and rates of wages to be paid in the industry. The basis of the authority for the enforcement of such provisions is not in any express section of the Industrial Recovery Act but is the code itself. If such obligations which have been held binding on the members of an

industry are created solely by the adoption and approval of a code, why should not the other provisions of the code duly approved be equally binding? Since the purpose of the National Industrial Recovery Act is to provide for industrial self-government within an industry by means of its code subject to the supervisory right reserved to the President by section 10-b of the act, the creation of a code authority as a governing body and the provisions for raising funds for administrative purposes contained in a code are as proper, necessary and important provisions as those relating to wages and hours if the purpose of the act is to be fulfilled. In the instant case the authority for the Code Authority Board to levy this assessment and to institute legal proceedings for the collection thereof is the code itself as amended and approved by the President. Liability of the defendant, a member of the industry, to pay the assessment arises from the same source. The code in the instant case, approved by the President, contains the provision:

"Article VI.

" 4. The Code Authority Board so organized is hereby constituted the agency for cooperating with the Administration or the Administrator as an administrative agency for the Fur Dressing and Fur Dyeing Industry."

The act itself, section 2-a, gives the President authority " to establish such agencies" " to effectuate the policy of this title " and reserves to him the right (Sec. 10-b) " to cancel or modify any order, approval, license, rule or regulation issued under this title."

The President is thus given by the act full regulatory power and authority *over all industries*, which he is authorized to delegate and has delegated to an administrator for industrial recovery and to various code authority boards upon the approval of their respective codes.

Unless it is held that this delegation of power to the President by Congress under the National Industrial Recovery Act contravenes the Constitution as a delegation of legislative power to the executive, then the right of a code authority to levy and collect assessments to defray administrative expenses — which is the only question in the instant case — must be recognized as a legal right duly conferred as a necessary means to effectuate the policy of the act as declared in section 1 thereof. The constitutionality of the act has been upheld in numerous decisions in various jurisdictions. (*Richmond Hosiery Mills* v. *Camp*, 7 F. Supp. 139; *Tannenbaum* v. *Department of Public Markets*, 152 Misc. 38; *Spielman Motor Sales Co.* v. *Dodge*, 8 F. Supp. 437.) In the case of *United States* v. *Schechter* (8 F. Supp. 136) CAMPBELL, D. J., held that the

National Industrial Recovery Act, in so far as it empowers the President to approve the code of fair competition for an industry, is not void on the ground that it constitutes an unconstitutional delegation of legislative power. Congress cannot delegate legislative power to the President, but may set up a general standard and delegate to the President the power to make such standard effective. Section 3-a, which empowers the President to approve codes, is a valid exercise of such power.

This assessment cannot be regarded in the nature of a tax or the authority granted to the President by the act as a delegation of the taxing power. A tax is a levy for funds to go into the government treasury to be used to support the government. (Cooley Taxation, § 1.) The assessment levied here is for the administrative expenses of the code authority, a governmental agency empowered to conduct a particular industry. The distinction between an assessment imposed for such purpose and a tax appears in the following decisions: *Head Money Cases* (112 U. S. 580); *Morgan* v. *Louisiana* (118 id. 455); *Nicchia* v. *New York* (254 id. 228); *People ex rel. Westbay* v. *Delaney* (73 Misc. 5).

The obligation to pay this assessment is imposed upon defendant, a member of the industry, by the superior governing body of the industry created by the statute and authorized to formulate and enforce rules and regulations for the government of the industry. The liability thus imposed rests upon statute and is quasi-contractual in nature. (13 C. J. 245.)

The Municipal Court of the city of New York has jurisdiction of an action to recover on such an obligation. (Lauer Mun. Ct. Prac. 1934; *Halkin* v. *Hume*, 123 Misc. 815; *Horowitz* v. *Winter*, 129 id. 814.) Even though such obligation arises under Federal statute, the Municipal Court has jurisdiction for its enforcement. (*Cohen* v. *Small*, 120 App. Div. 211.) The State Legislature of New York, however, has, by chapter 781 of the Laws of 1933, ratified and adopted the National Industrial Recovery Act with the intent to co-operate therewith for the general welfare. (*Spielman Motor Sales Co.* v. *Dodge, supra.*) In the above case, Judge MANTON, writing for statutory court of three judges, said: " Under the State Act (Schackno Act), provision is made for enforcement, by the State of New York, of the codes adopted under the National Industrial Recovery Act, upon the filing of such codes with the secretary of the state of New York. * * * Thus the codes become the standard of competition in intrastate business."

No consideration in the brief time allotted to this court to render a decision herein has been given to the contention of plaintiffs that by reason of the alleged assent to the adoption of the code by

defendant herein, a contractual obligation to pay this assessment exists and may be enforced by these plaintiffs in this action. Questions of fact and collateral issues urged by the defendant in opposition to this motion might be involved if the case were to be considered on that theory. Adopting the view that a code of fair competition and amendments thereto duly approved by the President is binding upon all members of the industry, whether assenting to it or not, an issue of law only is presented which may be disposed of on motion for summary judgment. This motion is granted and plaintiff is entitled to summary judgment in the amount determined on the prior assessment of damages as agreed on on the argument of this motion.